UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHELSEA MILLER,                                    CASE NO.:

        Plaintiff,

vs.


GUARDIAN COMMUNITY
RESOURCE MANAGEMENT, INC.,
a Florida Profit Corporation,

        Defendant.                         /

## COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiff, CHELSEA MILLER ("Plaintiff"), through undersigned counsel, files this Complaint against Defendant, GUARDIAN COMMUNITY RESOURCE MANAGEMENT, INC., a Florida Profit Corporation ("the Company or Defendant"), and states as follows:

## INTRODUCTION

1.      This case is brought pursuant to the Families First Coronavirus Response Act ("FFCRA"), Pub.L. No. 116-127, 134 Stat. 178 (2020).

2.      On March 18, 2020, the FFCRA was signed into law as a legislative initiative to address COVID-19. The FFCRA was thereafter enacted into law on April 1, 2020.

3.      In pertinent part, the FFCRA establishes paid leave for certain eligible employees impacted by the COVID-19 public health crisis.

4.      Division E of the FFCRA is referred to as the Emergency Paid Sick Leave Act (or "EPSLA"). It requires that covered employers provide eligible full time employees with up to 80 hours of paid sick leave where the employee is unable to work because they have been advised by a health care provider to self-quarantine due to concerns related to COVID-19 or the employee is experiencing symptoms of COVID-19 and seeking a medical diagnosis. *See* FFCRA § 5102(a).

5.      Under the FFCRA an employer may not require an employee use other paid leave provided by the employer to the employee before the employee uses the paid sick leave. *See* FFCRA § 5102(e)(2)(B).

6.      The FFCRA further prohibits employers "from discharging, disciplining, or discriminating against any Employee because such Employee took Paid Sick Leave under the [EPSLA] which is a part of the FFCRA, or "because such Employee has filed any complaint or instituted or caused to be instituted any proceeding . . . under or related to the EPLSA." 29 C.F.R. § 826.150(a); FFCRA § 5104(2).

7.      Under the FFCRA "[a]n Employer who discharges, disciplines, or discriminates against an Employee in the manner described in subsection (a) is considered to have violated section 15(a)(3) of the FLSA, 29 U.S.C. 215(a)(3), and shall be subject to the enforcement provisions relevant to such violations set forth in sections 16 and 17 of the FLSA, 29 U.S.C. 216, 217." 29 C.F.R. § 826.150(b)(2); FFCRA § 5105.

8.      Plaintiff, CHELSEA MILLER, brings this action pursuant to the FFCRA to recover from Defendant for back pay, reinstatement or in the alternative front pay in

the event reinstatement is not practical, an equal amount as liquidated damages, other monetary damages, equitable relief, declaratory relief, interest calculated at the prevailing rate, and reasonable attorneys' fees and costs.

## JURISDICTION

9.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 and 42 U.S.C. §2000e-5, in that the matters in controversy are brought pursuant to the FFCRA.

10.     Venue is proper as the acts and omissions giving rise to Plaintiff's claims occurred in Pasco County, Florida.

## PARTIES

11.     At all times material to this action, Plaintiff was, and continues to be, a resident of the State of Florida.

12.     At all times material to this action, Defendant, GUARDIAN COMMUNITY RESOURCE MANAGEMENT, INC., was, and continues to be, a Florida for Profit Corporation operating and engaged in business in Florida, doing business in Pasco County.

13.     From approximately April 1, 2020 until her termination on July 16, 2020, Plaintiff was employed as a Grants Assistant.

14.     At all times material to this action, Plaintiff was an "employee" of Defendant within the meaning of the FFCRA.

15.     At all times material to this action, Defendant was, and continues to be, "employers" within the meaning of the FFCRA.

16.     At all times material to this action, Defendant, GUARDIAN COMMUNITY RESOURCE MANAGEMENT, INC., is/was an employer under the FFCRA in that it employs less than 500 employees.

17.     Additionally, the Company is not eligible for an exemption under the FFCRA and, indeed, did not seek or obtain an exemption.

18.     At all times material to this action, Plaintiff was an employee entitled to leave under the FFCRA based on the fact that she was employed by Defendant.

## FFCRA ALLEGATIONS

19.     At all times material to this action, Defendant failed to comply with the FFCRA because Plaintiff validly exercised her rights pursuant to the FFCRA. Defendant interfered with Plaintiff's right to take FFCRA leave, and discriminated and retaliated against Plaintiff because she was seeking FFCRA leave.

20.     On or about April 3, 2020, Plaintiff was instructed to work from home in light of Florida Governor, Ron DeSantis' Order mandating all non-essential businesses closed due to COVID-19. For the first week of working from home Ms. Miller worked without issue.

21.     A week or so later, Ms. Miller's six (6) year old school closed due to COVID-19.  In light of the school closure and her son engaged in remote learning at home, Ms. Miller offered her resignation so she could focus on assisting her son.

22.     Defendant pleaded with her to go part-time in lieu of resigning. Plaintiff acquiesced and agreed to work twenty (20) hours per week remotely from home. For the next several weeks Plaintiff worked remotely without issue.

23.     Around early May 2020, Plaintiff was able to secure full-time child care so she could return to full-time work. At this same time, Plaintiff returned to the office. Again, Plaintiff worked without issue and did not receive any complaints or write-ups relating to her performance.

24.     On or about Wednesday, July 1, 2020, Plaintiff woke up feeling "off." On her commute to the office she developed nausea, a cough, and felt warm.

25.     Plaintiff texted her supervisor, Zayra Sanchez, to inform her of her symptoms and sought guidance as to whether the Company wanted her to report to work despite her symptoms or stay home.

26.     Ms. Sanchez told her to report to work but that they may end up sending her home with a laptop.

27.     When Plaintiff arrived to the office Ms. Sanchez told her that she spoke with CEO, Christine Alday, and Ms. Alday wanted her to remain at the office despite her symptoms.

28.     Plaintiff's symptoms progressed and she felt that given her symptoms it was imperative she get tested for COVID-19.  After lunch time she received a call from Antonio Jenkins, Project Manager, telling her that when she returned from lunch she should get the laptop, go get tested, and work from home until results are received.

29.     Plaintiff thereafter called Ms. Alday to inform her of Mr. Jenkins' suggestion, to which Ms. Alday replied: "working from home is a privilege and if you are sick you need to take PTO." She then told her not to take a laptop and go home.

30.     Plaintiff went home and immediately began her search for a testing

facility. Plaintiff made the earliest appointment available which was Friday, July 3, 2020, and informed her supervisor of the same.

31.     The next day, Thursday, July 2, 2020, around 11:45 a.m., Project Coordinator Jean texted Plaintiff asking her what her plan was for work while she was awaiting her COVID-19 test results. Jean told her she needed to work from home while she was awaiting her results and that Ms. Sanchez would send her a task list.

32.     Given Ms. Miller's symptoms were still manageable she agreed to work from home while awaiting her results. Ms. Miller drove over to the office to pick up her laptop and then returned home.

33.     At 3:37 p.m., within five minutes of returning home, Jean texted Plaintiff to inquire about her progress on the task list. Given Plaintiff had just returned home she told Jean that she had not yet made much progress. Jean then asked for a 5:00 p.m. progress update which Plaintiff complied with.

34.     On Friday, July 3, 2020, the office was closed and Plaintiff got tested for COVID-19. Her physician instructed her to self-quarantine until she received her results. Plaintiff informed Defendant of the same.

35.     From Monday, July 6, 2020, to Friday, July 10, 2020, Plaintiff worked from home while awaiting her results. Plaintiff's symptoms continued to progress from the prior week and it became very difficult to work from home while sick.

36.     On Tuesday July 7, 2020, Plaintiff texted Ms. Sanchez and told her she was feeling very unwell. Ms. Sanchez asked Plaintiff if she wanted to take time off but also said she should "re-read Ms. Alday's texts" insinuating that if she did take time off

her job may be in jeopardy. Fearful of losing her job, Plaintiff decided she would try to power through.

37.     On Friday, July 10, 2020, Ms. Alday called Plaintiff. Ms. Alday reiterated that "working from home is a privilege" and informed Plaintiff that she was not happy with her performance. Plaintiff acknowledged that it was not her best week because she was feeling very ill.

38.     Ms. Alday told her that if she was sick she needed to take PTO – not be working from home.

39.     Plaintiff explained that she did not want to leave Ms. Sanchez empty handed which is why she attempted to push through her symptoms and work from home. Ms. Alday then told her that come Monday morning, she either needed to take PTO or she should be in the office at 8:00 a.m.

40.     Ms. Alday required in person appearance despite Ms. Miller's symptoms being compatible with COVID-19 and despite her physician's instructions to self-quarantine until test results are received. Ms. Alday told also told her that even if her results indicate she is positive for COVID-19 she should still return to work because individuals who have been exposed to cats can test positive for COVID-19.

41.     Not willing to disobey her doctor's orders or put her co-workers at risk (and also still feeling very ill), Plaintiff chose to use her PTO.

42.     On July 15, 2020, Plaintiff received her test results indicating she was negative for COVID-19. However, Plaintiff was still suffering from severe symptoms, all of which were consistent with the virus.

43.     Plaintiff had a follow up appointment with her doctor to discuss the same. Her doctor informed her that he believed her results may be a false negative given all of her symptoms are consistent with the virus.

44.     She encouraged her to re-test and self-quarantine until her symptoms disappeared.

45.     Plaintiff informed Ms. Alday of her doctor's instructions and sent her a copy of the doctor's report. Plaintiff told Ms. Alday she could work from home but that she could not return to in person work until she was symptom free for three days per her doctor's orders.

46.     Ms. Alday responded that she needed to go to a doctor or urgent care that day (despite Plaintiff already having seen a doctor earlier in the day) and did not address Plaintiff's request to work remotely.

47.     The next day, on July 16, 2020, Ms. Miller was told to come to work and drop off her work equipment. She was handed a termination letter. No explanation was given regarding the reason for her termination.

48.     By terminating Plaintiff, Defendants interfered with her right to EPSLA leave.

49.     Moreover, Defendants discriminated against Plaintiff by terminating her because she sought to enforce her rights under the EPSLA. As such, there is a causal link between Plaintiff's request for leave and the adverse employment actions described herein.

50.     Under the FFCRA, Plaintiff is entitled to liquidated damages (including

interest) unless Defendants prove their actions were in good faith compliance with the FFCRA and that it had objectively reasonable grounds to think its conduct did not violate the FFCRA.

51.     Defendant willfully violated Plaintiff's rights qualifying her for liquidated damages.

52.     Plaintiff has incurred attorneys' fees and costs which are recoverable under the FFCRA.

53.     Plaintiff sustained damages as a result of Defendant's conduct including lost compensation and benefits, liquidated damages, and reasonable attorneys' fees and costs.

**COUNT I**
**FFCRA - INTERFERENCE**

54.     Plaintiff re-alleges and incorporates all allegations contained within Paragraphs one (1) through fifty-three (53), above, as if fully set forth herein.

55.     At all times material to this action, Defendant was a company with less than 500 employees and is thus subject to the FFCRA.

56.     At all times material to this action, Defendants interfered with Plaintiff's right to take leave from work under the FFCRA.

57.     Plaintiff gave Defendant appropriate notice of her need to be absent from work.

58.     Defendant interfered with the exercise of Plaintiff's right to EPSLA leave because Defendant terminated Plaintiff for requesting EPSLA leave.

59.     As a result of Defendant's intentional, willful and unlawful acts by interfering with Plaintiff's rights pursuant to EPSLA leave, Plaintiff has suffered damages and incurred reasonable attorneys' fees and costs.

60.      Because Defendant cannot show that its violation of the FFCRA was in good faith, Plaintiff is entitled to liquidated damages.

61.     Defendant's violation of the FFCRA was willful, as Defendans knew or should have known their actions were in violation of the FFCRA.

WHEREFORE Plaintiff, CHELSEA MILLER, demands judgment against Defendant for back pay, reinstatement and in the alternative front pay in the event reinstatement is not practical, an equal amount as liquidated damages, other monetary damages, equitable relief, declaratory relief, and reasonable attorneys' fees and costs, and any and all further relief that this Court determines to be just and appropriate.

## COUNT II
## FFCRA - RETALIATION

62.     Plaintiff re-alleges and incorporates all allegations contained within Paragraphs one (1) through fifty-three (53), above, as if fully set forth herein.

63.     At all times material to this action, Defendant was a company with less than 500 employees and is thus subject to the FFCRA's retaliation provisions.

64.     At all times material to this action, Defendant retaliated against Plaintiff because she exercised her right to take leave from work that was protected under the FFCRA.

65.    At all times material to this action, Defendant retaliated against Plaintiff in violation of the FFCRA by terminating her employment for seeking time off under the FFCRA.

66.    At all times material to this action, Defendant acted with the intent to retaliate against Plaintiff, because Plaintiff exercised her right to leave pursuant to the FFCRA.

67.    As a result of Defendant's intentional, willful and unlawful acts of retaliating against Plaintiff for exercising her rights pursuant to the FFCRA, Plaintiff has suffered damages and incurred reasonable attorneys' fees and costs.

68.    Because Defendant cannot prove that their violation of the FFCRA was in good faith, Plaintiff is entitled to liquidated damages.

69.    Defendant's violation of the FFCRA was willful because Defendant knew or should have known their actions were in violation of the FFCRA.

WHEREFORE Plaintiff, CHELSEA MILLER, demands judgment against Defendant for back pay, reinstatement and in the alternative front pay in the event reinstatement is not practical, an equal amount as liquidated damages, other monetary damages, equitable relief, declaratory relief, and reasonable attorneys' fees and costs, and any and all further relief that this Court determines to be just and appropriate.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated this 7th day of December 2020.

Respectfully submitted,

**/s/ JOLIE N. PAVLOS**
Jolie N. Pavlos, Esq.
FBN 0125571
**/s/ GREGORY R. SCHMITZ**
Gregory R. Schmitz, Esq.
FBN 0094694
Morgan & Morgan, P.A.
20 N. Orange Avenue, Suite 1600
Orlando, FL 32801
Telephone: (407) 245-3517
Facsimile: (407) 204-2206
E-mail: JPavlos@forthepeople.com
          GSchmitz@forthepeople.com
***Attorneys for Plaintiff***